IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BROTHERS HEALTHCARE, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>BRIAN CARTER, INC.,<br>*d/b/a Westside Specialty Pharmacy*, *et al.*,<br><br>  Defendants. | Case No. 21-cv-00383-DKW-RT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND** |

Defendant Brian Carter, Inc. (Carter) moves for judgment in this lawsuit premised upon a business relationship with Plaintiff Brothers Healthcare, Inc. (Brothers) that appears to have soured. Brothers alleges that the parties agreed to provide pharmacy services to Brothers' patients, but, instead of acting consistent with their agreement to accomplish this goal, Carter chose to essentially steal some of Brothers' patients and at least one of Brothers' employees and failed to pay Brothers as they had agreed. Carter argues that all claims related to these allegations should be dismissed primarily because Brothers has failed to allege sufficient facts to support plausible claims for relief under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Having reviewed the parties' briefing and the Complaint, the Court, in part, agrees with Carter that certain of Brothers' factual allegations fail to state plausible

claims for relief.  However, in other respects, Carter's arguments fail to convince the Court that it is entitled to judgment on the pleadings.  Therefore, as more fully explained below, the motion for judgment on the pleadings, Dkt. No. 28, is GRANTED IN PART and DENIED IN PART with leave to amend the claims that are found deficient.

## FACTUAL BACKGROUND

The following relevant facts are alleged in the Complaint.  In January 2020, Brothers and Carter entered into a Pharmacy Wholesale and Shared Pharmacy Services Patient Care Coordination Agreement (Agreement) for the purpose of distributing "shared pharmacy services" to Brothers' patients with bleeding disorders.  Compl. at ¶ 6, Dkt. No. 1.  Pursuant to the Agreement, the parties intended to provide "shared pharmacy services" as follows.  First, Brothers would receive an initial patient prescription from a patient or prescribing physician.  *Id*. at ¶ 7.  Second, Brothers would notify patients that their prescriptions could be filled by a different pharmacy and provide Carter's name to the patient.  Third, Brothers would transfer the prescription and ship the prescribed product to Carter.[1]  Finally, Carter would then deliver the product to the patient.  *Id*.  Pursuant to the Agreement, Brothers was also responsible for monitoring patient treatment.  *Id*. at ¶ 8.  Pursuant to the Agreement, Carter agreed to pay Brothers amounts invoiced to

---

[1] In the Agreement, "Product" is defined as blood factor and immunoglobulin products listed in Schedule A attached thereto.  Dkt. No. 1-1 at 1, 3, 18.

2

Carter for products and Brothers agreed to pay Carter a fixed fee. *Id*. at ¶ 9. The parties also agreed that, during the term of the Agreement and for one year thereafter, no party would employ or retain as an independent contractor any person who was, at any time during the immediately preceding 12-month period, employed by or under contract with the other party. *Id*. at ¶ 10; Pharmacy Wholesale Distribution & Shared Pharmacy Services Patient Care Coordination Agreement at ¶ 20.1, Dkt. No. 1-1.

In 2021, Carter began to violate the express and implied terms of the Agreement. Compl. at ¶ 12. According to the Complaint, Carter did so by (1) hiring a former Brothers employee, (2) refusing to pay Brothers amounts invoiced, (3) claiming that patients referred by Brothers were the patients of Carter, and (4) "[s]oliciting" Brothers' patients so as to induce them to become patients of Carter. *Id*.

## PROCEDURAL BACKGROUND

Brothers initiated this action with the filing of the Complaint on September 13, 2021. Dkt. No. 1. Therein, it asserted the following five claims under State law against Defendant Carter: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair competition; (4) interference with prospective economic advantage; and (5) unjust enrichment.

After answering the Complaint, Dkt. No. 10, on May 14, 2022, Carter filed the instant motion for judgment on the pleadings ("motion"), Dkt. No. 28.[2] Brothers filed a response to the motion, Dkt. No. 32, to which Carter replied, Dkt. No. 33. This Order follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed…a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In addition, "the tenet that a court must accept as true all of the allegations contained in

---

[2]Defendant had filed an earlier motion for judgment on the pleadings, Dkt. No. 20, but that motion was denied without prejudice for failure to comply with the requirement of Local Rule 7.8 to discuss the substance of the motion with opposing counsel *before* filing the same, Dkt. No. 27.

a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## **DISCUSSION**

While the motion is far from a model of clarity, the principal thrust of the same is that the Complaint lacks sufficient factual allegations to state claims that are facially plausible, in violation of *Iqbal* and *Twombly*. Specifically, Carter contends that, for each claim, the Complaint relies upon legal conclusions or statements,

speculates that Carter "must have done something wrong", and does not include factual allegations related to, *inter alia*, Carter owing money to Brothers, Carter soliciting customers, Brothers performing under the Agreement, or Carter and Brothers being competitors.

As an initial matter, the Court does not disagree with Carter's arguments to the extent that the Complaint contains a dearth of detailed factual allegations with respect to Carter's conduct after the parties entered into the Agreement. In fact, the Complaint's "factual" allegations largely concern summarizing provisions of the Agreement with little said about what Carter specifically did to breach that Agreement. Compl. at ¶¶ 6-11. Carter's alleged misconduct, in fact, is contained entirely within one paragraph of the Complaint, albeit one involving a few sub-paragraphs. *Id*. at ¶ 12. In sum, Carter's alleged conduct is that it hired a former employee of Brothers, refused to pay invoiced amounts, claimed Brothers' patients as its own, and solicited Brothers' patients. *Id*. There is no further factual enhancement. The sole question, therefore, despite the largely unhelpful and, at times, confusing arguments in Carter's briefing, is whether those allegations are enough to satisfy *Iqbal/Twombly*, *i.e.*, enough to state a claim that is plausible on its face.

For the following reasons, in the specific context of this case, the Court believes that, in certain respects, the allegations are insufficient, while, in other

respects, Carter's arguments fail to persuade the Court that it is entitled to the relief sought. The Court, therefore, addresses each claim in turn below.

## 1. Breach of Contract

First, Brothers alleges that Carter hired one of Brothers' former employees. While the Agreement contains a provision prohibiting the parties from hiring each other's employees, it does so only when certain circumstances are present, one being that the former employee was, "at any time during the immediately preceding twelve (12) month period," employed by the pertinent party. Dkt. No. 1-1 at ¶ 20.1. Here, there is no allegation that the unidentified employee was employed by Brothers at any time during the immediately preceding 12-month period. Therefore, this allegation fails to state a claim for breach of the Agreement.[3]

Second, Brothers alleges that Carter refused to pay "amounts due and owing under the Agreement." However, other than using the legal conclusion "due and owing", the Complaint fails to allege how or why Carter owed any amounts to Brothers. With that conclusion omitted, the allegation is simply that Carter refused to pay Brothers. That alone does not state a plausible claim for breach of the Agreement. Among other things, the Agreement contains a payment structure, which includes Carter paying the "amounts invoiced" for products. Dkt. No. 1-1 at

---

[3] In the motion, Carter adds that Brothers fails to allege the employee's position or duties. Dkt. No. 28-1 at 16. However, Carter fails to explain how those details render this claim less than plausible in light of the terms of the Agreement.

7

¶ 10.1.  It is not alleged, however, whether Carter refused to pay for amounts invoiced.  Nor does the Complaint identify any other specific payment provision of the Agreement that was allegedly violated.  Therefore, this allegation also fails to state a claim for breach of the Agreement.[4]

Third, Brothers alleges that Carter has claimed patients Brothers referred as being Carter's own patients.  Brothers continues that, "[i]n this way, [Carter] seeks to avoid paying the amounts required under" the Agreement.  The Complaint fails to allege, however, that Carter has, in fact, failed to pay any amounts required under the Agreement in this regard or even which provision of the Agreement has been violated.  The Complaint also fails to allege that these patients were still patients of Brothers.  Therefore, this allegation too fails to state a claim for breach of the Agreement.

Finally, Brothers alleges that Carter has "[s]olicited" its patients "so as to induce those patients to cease" being Brothers' patients.  The Complaint, however, fails to allege any provision of the Agreement that has been violated by this alleged conduct.  Nor, after reviewing the Agreement, can the Court readily discern one.

---

[4] In the motion, Carter adds that the Complaint fails to allege the *amount* that it owes Brothers. Dkt. No. 28-1 at 16-17.  Carter again fails to explain, though, how omission of any such allegation renders this claim less than plausible.

Thus, at this stage, this allegation also fails to state a claim for breach of the Agreement.[6]

## 2. Breach of Good Faith and Fair Dealing

In Hawaiʻi, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 337-338 (Haw. 1996). "Good faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Haw. Leasing v. Klein*, 698 P.2d 309, 313 (Haw. Ct. App. 1985).

In the Complaint, Brothers alleges that Carter violated its duties of good faith and fair dealing by soliciting Brothers' patients, failing to pay amounts due, and hiring Brothers' former employee. With respect to the latter two, the Court disagrees that these alleged facts support a claim for breach of the implied covenants. Notably, as discussed above, the Complaint fails to allege (1) how or why any amounts are due and owing under the Agreement, and (2) whether the former employee was hired under circumstances that would violate the Agreement.

---

[5]In the motion, Carter appears to contend that the allegation of it soliciting patients is contradicted by the fact that Brothers *referred* patients to Carter. Dkt. No. 28-1 at 17, 19. To the extent Carter's point is that improper solicitation could not have occurred simply because patients were initially referred to Carter, the Court disagrees.

[6]With respect to the breach of contract claims, Carter also argues that Brothers failed to sufficiently allege its own performance under the Agreement. Dkt. No. 28-1 at 15-16. However, Carter provides no support for the proposition that Brothers need allege all the ways it performed under the Agreement in order to state a claim for breach of contract in Hawaiʻi.

Without those facts, and in light of the language of the Agreement itself, it cannot be said that Carter's alleged conduct would be inconsistent with justified expectations arising from the Agreement.

The situation is closer, but ultimately similar, with respect to the allegation that Carter solicited and "attempted to retain for itself" patients that Brothers referred. As discussed above, there is no allegation in the Complaint of how this alleged conduct, even if true, violates the Agreement or, in the context of this claim, is inconsistent with the justified expectations thereunder. At the moment, at best, the Court is simply left to guess.[7] Therefore, at this juncture, the Complaint fails to state a claim for breach of the implied covenants of good faith and fair dealing.

3. **Unfair Competition**

In Hawai'i, "competitive conduct is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 982 P.2d 853, 884 n.34 (Haw. 1999) (quotation omitted), *superseded by statute as noted in Calipjo v. Purdy*, 439 P.3d 218, 229 n.23 (Haw. 2019).

---

[7]For example, presumably by using the term "solicitation", the Court is meant to assume that Carter has, in some unidentified fashion, wrongfully stolen Brothers' patients. The meagre factual allegations of the Complaint do not allow the Court to do this, however.

In the Complaint, Brothers alleges that Carter engaged in unfair competition by failing to pay amounts due under the Agreement, soliciting patients Brothers had referred, and hiring one of Brothers' former employees. In the motion, Carter argues that these allegations are insufficient because the Complaint fails to allege that Brothers and Carter competed with each other or that Carter "had anything to gain" from allegedly competing unfairly with Brothers. Dkt. No. 28-1 at 21-22.

Carter's arguments miss the mark. As Brothers observes, Dkt. No. 32 at 18, in Hawai'i, an unfair competition claim does not require the parties to be competitors. *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 148 P.3d 1179, 1212 (Haw. 2006). Further, Carter provides no explanation or support for why *its* gain (or lack thereof) is relevant to the plausibility of this claim. Therefore, in light of the arguments Carter makes in the motion, it is not entitled to judgment with respect to this claim.[8]

### 4. Interference with Prospective Economic Advantage

In Hawai'i, the elements for the claim of interference with prospective business advantage are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it

---

[8] In its reply, Carter argues, for the first time, that this claim is deficient because the Complaint does not allege how Brothers' business was injured by any alleged anticompetitive conduct. Dkt. No. 33 at 10-13. Because this argument was raised for the first time in reply, however, the Court declines to consider it at this juncture. *See* Local Rule 7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

>maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Haw. Med. Ass'n*, 148 P.3d at 1218.

In the Complaint, Brothers alleges that it had an "ongoing relationship" to provide patients with "continuous monthly dispensing of medications" and Carter interfered with these relationships by "actively switching" patients from Brothers. In the motion, Carter argues that the Complaint contradicts any suggestion that Brothers had an ongoing relationship to dispense medication to patients and that the Complaint fails to allege any efforts Brothers took to sustain its relationships with patients. Dkt. No. 28-1 at 23.

Carter's arguments once again miss the mark. First, the Complaint, as well as the Agreement attached thereto, clearly allege a relationship between Brothers and patients needing to have prescriptions filled, given the allegation that Brothers received the initial prescription from patients. The fact that Carter may have been the one who directly dispensed medication to patients does not "contradict" any such Brothers/patient relationship, as Carter suggests. Put simply, it is more than plausible, in light of the terms of the Agreement, for both Brothers and Carter to have a relationship with the same patients. Second, Carter fails to explain or provide support for the contention that Brothers must allege how it "sustain[ed]" its

12

relationships with patients in order to state a plausible claim in this regard. Therefore, the Court rejects this as a reason for awarding Carter relief.

5.  **Unjust Enrichment**

In Hawai'i, a claim of unjust enrichment involves (1) plaintiff conferring a benefit on the defendant, and (2) retention of the benefit being unjust. *See Durette v. Aloha Plastic Recycling, Inc.*, 100 P.3d 60, 73-74 (Haw. 2004). In the Complaint, Brothers alleges that it conferred the following benefits on Carter: (1) furnishing patient prescriptions to Carter; (2) furnishing prescribed products to Carter; and (3) managing and monitoring patient treatment. Brothers further alleges that Carter has refused to pay for the above-described benefits and, thus, has been unjustly enriched.

The Court disagrees that the foregoing allegations state claims for unjust enrichment. As for managing and monitoring *patient* treatment, the Complaint, and Brothers' response to the motion, provide no allegation or explanation for how any such treatment benefited *Carter* as opposed to the *patients* being treated. As for furnishing patient prescriptions to Carter, while Brothers alleges that Carter has failed to make payment for this alleged benefit, nothing in the Agreement suggests that Carter was required to do so. Rather, the Agreement appears to reflect that payment was required for the provision of prescribed products. *See* Dkt. No. 1-1 at ¶¶ 4.1, 4.4, 10.1. Moreover, even absent the terms of the Agreement, in light of the

minimal factual allegations of the Complaint, at this juncture, there is nothing therein otherwise suggesting that Carter has been unjustly enriched in this regard.

As for furnishing prescribed products to Carter, unlike the prior two examples, this appears to involve the conferring of a benefit on Carter: sending it blood factor and immunoglobulin products. The problem, however, is that the Complaint fails to indicate whether retention of this alleged benefit is unjust. Particularly, in light of the bare allegations of the Complaint, at least three possible scenarios exist in this regard: (1) Carter has been paid by patients for products dispensed to them, but has failed to reimburse Brothers for the same; (2) Carter has dispensed products to patients, but not received payment from them; and/or (3) the products remain on Carter's shelves waiting for patients to seek fulfillment of prescriptions. As far as the Court can tell at this stage, only the first scenario above could be construed as the unjust retention of a benefit. Given the complete lack of factual allegations in this regard, though, the Complaint leaves at least all three, or even a mixture of the three, as possibilities. As a result, at this stage, the Complaint fails to state a claim for unjust enrichment. *See Iqbal*, 556 U.S. at 679 (stating that the "mere possibility of misconduct" is insufficient to show entitlement to relief).[9]

---

[9] In its reply, for the first time, Carter asserts that the Complaint fails to allege whether Brothers has a claim in excess of $75,000. Dkt. No. 33 at 5, 14. To the extent this poorly articulated assertion pertains to whether diversity jurisdiction exists in this case, because it was raised for the first time in reply, the Court declines to consider it. *See* n.8 *supra*.

**6.      Leave to Amend**

In the motion, Carter asserts that dismissal should be with prejudice, claiming this is necessary to "protect patient rights to privacy and freedom from inconvenience, embarrassment, or harassment…." Dkt. No. 28-1 at 24.   Like many of Carter's arguments, however, this one is entirely unsupported and unexplained.   Given that this Order is the first notice Brothers has received of the deficiencies in its Complaint, and it is possible that those deficiencies could be cured by amendment, the Court finds sufficient ground to grant leave to amend all of the claims that have been found deficient herein.   See Abagninin, 545 F.3d at 742.

## CONCLUSION

To the extent set forth herein, the motion for judgment on the pleadings, Dkt. No. 28, is GRANTED IN PART and DENIED IN PART with leave to amend. Brothers may have until **September 16, 2022** to file an amended complaint**.** Should Brothers file a timely amended complaint, it must include therein **all** claims, including claims that have not been found deficient herein, as to which it seeks to proceed in this case.   Cf. Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).   Should Brothers choose not to file an amended complaint by the deadline set forth above, this case shall

proceed with Brothers' claims of unfair competition and interference with prospective economic advantage only, as alleged in the Complaint.

IT IS SO ORDERED.

Dated: August 30, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Brothers Healthcare, Inc. v. Brian Carter, Inc.*; Civil No. 21-00383 DKW-RT; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**